571 P.2d 762

STATE of Idaho, Plaintiff-Respondent,

v.

Patrick KERRIGAN, Defendant-Appellant.

No. 12199.

Supreme Court of Idaho.

Nov. 18, 1977.

Owen L. Knowlton, of Knowlton & Miles, Lewiston, for defendant-appellant.

Wayne L. Kidwell, Atty. Gen., James F. Kile, Asst. Atty. Gen., Lynn E. Thomas, Deputy Atty. Gen., Boise, for plaintiff-respondent.

BISTLINE, Justice.

The trial court here was presented with the problem of sentencing 20-year old Patrick Kerrigan who pleaded guilty to armed robbery. Kerrigan's only prior brushes with the law were traffic violations. This robbery was non-alcoholic, non-drug connected. Kerrigan, while being pressed by creditors, was informed by "friends" of a planned robbery of a service station and how easy it would be. Kerrigan participated, and, although he did not brandish it, opened his jacket to display a revolver which was stuck in his belt. The record shows that he had an unusual childhood in that he never knew his father, saw very little of his mother, and was raised by his grandparents. He was a member of a

church and was married just four months before the robbery. He was employed and had about $2,000 in debts.

At the sentencing hearing on December 3, 1975, the trial court, though reluctant to place young Kerrigan in the penitentiary was equally mindful of the seriousness of the offense. He concluded that this was not a proper case for a withheld sentence and sentenced him to a term not to exceed five years, but added to the judgment the following:

"IT IS FURTHER ORDERED That execution of said sentence is hereby stayed until March 3, 1976, at the hour of 10:30 a. m., at which time defendant shall appear and show cause why he should not begin serving said sentence."

When Kerrigan appeared as directed, with counsel present, the trial court questioned Kerrigan about: (a) a police report the court had received on an altercation between Kerrigan and his landlord in which Kerrigan had allegedly threatened the landlord with a large knife, and (b) a report that the police had come to the Kerrigans' house because a neighbor had complained of noise from a "fight" between Kerrigan and his wife. The court expressed dissatisfaction with Kerrigan's responses and orally ordered that Kerrigan begin serving his sentence that day. On March 5, 1976, the court entered a formal "Judgment of Conviction and Order to Begin Serving Sentence." Kerrigan filed notice of appeal on March 10, 1976. The same day the court issued a certificate of probable cause, but denied Kerrigan's motion for admission to bail pending appeal.

### I.

■ Appellant Kerrigan's main contention on appeal is that he was denied his constitutional right to due process of law in that his probation-like status was revoked without the safeguards this Court has held applicable to probation revocation hearings. Although we are impressed with the compassion of the trial court in its initial endeavor to divert Kerrigan from the penitentiary, we agree that Kerrigan was placed in a probation-like status, albeit unsupervised.

The options which were open to the trial court at a sentencing hearing are outlined in I.C. § 19–2601:

"Whenever any person shall have been convicted, or enter a plea of guilty, in any district court of the state of Idaho, of or to any crime against the laws of the state, except those of treason or murder, the court in its discretion, may:

"1. Commute the sentence and confine the defendant in the county jail, or, if the defendant is of proper age, in the state youth training center; or

"2. Suspend the execution of the judgment at the time of judgment or at any time during the term of a sentence in the county jail and place the defendant on probation under such terms and conditions as it deems necessary and expedient; or

"3. Withhold judgment on such terms and for such time as it may prescribe and may place the defendant on probation; or

"4. Suspend the execution of the judgment at any time during the first one hundred and twenty (120) days of a sentence to the custody of the state board of correction, during which time the court shall retain jurisdiction over the defendant which jurisdiction shall be entered on the order of commitment, and place the defendant on probation under such terms and conditions as it deems necessary and expedient, notwithstanding that the term of the court during which such defendant was convicted or sentenced may have expired; upon application of the state board of correction and for good cause shown, the court may extend the period under which it retains jurisdiction of the defendant an additional sixty (60) days.

"5. If the crime involved is a felony and if judgment is withheld as provided in 3 above or if judgment and a sentence of custody to the state board of correction is suspended at the time of judgment in accordance with 2 above or as provided by 4 above and the court shall place the defendant upon probation, it shall be to the board of correction. . . . "

Which option the trial court chose to pursue is not entirely clear from the record. In oral remarks addressed to Kerrigan at the December 3 sentencing hearing, the court stated:

". . . the Court is of the opinion that this is not a proper case for a withheld sentence, so the Court is going to order that you be committed to the Idaho State Board of Correction for a maximum indeterminate period not to exceed five years. However, the Court is going to order that that judgment, or execution of that judgment by stayed for approximately three months. By that I mean I want you back in this courtroom at 10:00 o'clock on the first Wednesday in March to show cause, if any you have, why you should not commence serving this sentence. . . ."

Assuming that the court was proceeding under paragraph (2) of I.C. § 19–2601 and did not want to send young Kerrigan to the penitentiary, it would necessarily follow that any probation period should be under the supervision of the Board of Correction as provided in paragraph (5) of said statute. It may very well be that the procedure adopted by the court was that described in the Idaho Judges Sentencing Manual, prepared and published by a Supreme Court committee and the Administrative Office of the Courts, in January, 1976, which reads:

"Some judges have used the technique of suspending execution of judgment for a period—30, 60, or 90 days—at a time and requiring the defendant to appear to show cause why the judgment should not be executed. This technique may be useful in dealing with defendants who have been convicted of non-violent crimes and who could not live with the conditions of probation. The judge can renew the period of suspension or execution of judgment so long as the defendant can show that he is performing satisfactorily."

Regardless of our reaching a conclusion as to whether the trial court followed the suggestion of the manual, or believed himself proceeding within the alternatives provided by the statute, Kerrigan, once placed in the status of a probationer, was entitled to the rights as well as the obligations attendant to that status. It follows that the hearing of March 3, 1976, was essentially a probation-revocation hearing, the legal adequacy of which is the narrow issue for our consideration.

Kerrigan was entitled to all of the safeguards this Court has held applicable to such hearings, including notice of the alleged violations against him, an opportunity to prepare a defense and an opportunity to call witnesses and confront the witnesses against him.

"The statutes and decisional law herein require that a probation revocation hearing must be based upon charges sufficiently specific that the probationer be informed of the allegedly violated term or condition of the probation order and the manner and circumstances of his violation so that he can intelligently prepare his defense. He must also be allowed to call witnesses under oath, to testify himself and otherwise to produce evidence in his own behalf, provided, of course, that all evidence be related to the subject of the inquiry, i. e., has he in fact violated his probation agreement in a manner which demonstrates that he no longer deserves his circumscribed liberty? A probationer must also be given a reasonable opportunity to examine and rebut adverse evidence, and to cross-examine hostile witnesses." State v. Edelblute, 91 Idaho 469, 480, 424 P.2d 739, 750 (1967).

Without such procedural safeguards, the probationer lacks a "full opportunity to present evidence in [his] behalf" and such opportunity as he does have is rendered "meaningless." State v. Grady, 89 Idaho 204, 213, 404 P.2d 347, 352 (1965).

■ In the present case, the requisite procedural safeguards were lacking. Kerrigan signed no probationary agreement and the trial court's oral admonitions to Kerrigan at the hearing on December 3 cautioned him only that "if you maintain your job, you keep out of trouble, at that time I would consider another stay of execution of the judgment but, believe me, if you get in

any kind of trouble and you again through no—through your own fault become unemployed, you come prepared to go to the penitentiary." The two alleged violations relied upon by the court in revoking probation were apparently not based on written complaints; such charges were not made known to Kerrigan or his attorney in advance of the second hearing. Thus there was no opportunity to prepare a defense, to call witnesses in his own behalf or to confront those who had made the charges. Such a procedure cannot measure up to the "considerations of fairness and sound judicial administration" which this Court has held are mandated by the Fourteenth Amendment to the United States Constitution and art. I, § 13 of the Idaho Constitution. *State v. Edelblute, supra.* The decision of the trial court must, therefore, be reversed and the case remanded for a probation revocation hearing.

## II.

Kerrigan's other major assignment of error is that the trial court abused its discretion in denying his motion for admission to bail pending appeal. In Idaho, the procedures governing admission to bail after conviction and while an appeal is pending have long been spelled out in I.C. §§ 19–2905 and –2906.

"19–2905. Admittance to bail after conviction.—After conviction of an offense not punishable with death, a defendant who has appealed may be admitted to bail:

1. As a matter of right, when the appeal is from a judgment imposing a fine only.

2. As a matter of discretion in all other cases.

"19–2906. Nature of bail.—If the offense is bailable, the defendant may be admitted to bail . . .

"After conviction, and upon an appeal:

. . . . .

2. If judgment of imprisonment has been given, that he will surrender himself in execution of the judgment, upon its being affirmed or modified, or upon the appeal being dismissed; or that in case the judgment be reversed, and that the cause be remanded for a new trial, that he will appear in the court to which said cause may be remanded, and submit himself to the orders and process thereof."

The Idaho Rules of Criminal Procedure, effective since January 1, 1972, additionally provide as follows:

"Rule 46. Release on bail.—(a) RIGHT TO BAIL. . . .

(2) Upon review. Bail may be allowed pending appeal unless it appears that the appeal is frivolous or taken for delay. Pending appeal to a district court or to the Supreme Court, bail may be allowed by the trial judge or a judge or justice of the court to which the case is appealed. Any judge or justice authorized to grant bail may at any time revoke the order admitting the defendant to bail."

No motion has been made that this Court invoke its own powers and set bail for defendant Kerrigan, pursuant to I.C.R. 46(a)(2). We thus consider only the order of the trial court denying bail.

Our case law construing the statutory provisions makes it clear that a defendant's application for admission to bail is addressed to the sound discretion of the trial court and unless it appears that such discretion has been abused, the decision of the trial court will not be disturbed on appeal. *State v. Dunn,* 91 Idaho 870, 434 P.2d 88 (1967). Nonetheless, judicial discretion must be exercised in a judicial manner and bail cannot be denied without "some sufficient reason" being articulated by the trial court. *State v. Iverson,* 76 Idaho 117, 278 P.2d 205 (1954). The statement of such reasons is essential to any meaningful appellate review of the decision. The factors to be considered in determining whether or not a defendant should be admitted to bail were outlined in this Court's opinion in *State v. Jiminez,* 93 Idaho 140, 456 P.2d 784 (1969). First, the appeal must be taken in good faith. Once the trial court has assured itself that the appeal is "not clearly and palpably frivolous and vexatious," the

certificate of probable cause for appeal must issue. *State v. Iverson, supra,* 76 Idaho at 119, 278 P.2d [205] at 206.

 The issuance of a certificate of probable cause for appeal, however, does not automatically guarantee a defendant that he will be admitted to bail. The court must also satisfy itself that defendant's release would not constitute a menace to society and that the defendant is not likely to flee. The former determination as to whether release of the defendant would constitute "a danger to the community," is made by considering the nature of the crime of which defendant has been convicted, as well as the nature of any prior convictions: the more serious the past record, the greater the justification for denying release on bail pending appeal. *State v. Jiminez, supra,* 93 Idaho at 145, 456 P.2d 784. The determination as to whether a defendant is likely to "jump bail" is made by considering

"(1) the defendant's ties to the community, including his employment, the duration of his residence, his family attachments and his property holdings;

"(2) the defendant's record of appearance at past court hearings or of flight to avoid prosecution." *In re Podesto,* 15 Cal.3d 921, 127 Cal.Rptr. 97, 544 P.2d 1297, 1305 (Cal.1976).

Upon remittitur the trial court may entertain such motion or motions as either the defendant or the State may make.

The judgment of conviction is affirmed, but the judgment, insofar as it directed execution of sentence is reversed and the cause restored to its status as of prior to proceedings on March 3, 1976, and further proceedings to be consistent herewith.

DONALDSON and SHEPARD, JJ., and SCOGGIN, District Judge (ret.), concur.

BAKES, J., concurs in Part I only.