**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 46386**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: December 2, 2019** |
| Plaintiff-Respondent, | ) |
| | ) **Karel A. Lehrman, Clerk** |
| v. | ) |
| | ) **THIS IS AN UNPUBLISHED** |
| RODNEY R. BAUMGARTNER, | ) **OPINION AND SHALL NOT** |
| | ) **BE CITED AS AUTHORITY** |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Cassia County. Hon. Michael P. Tribe, District Judge.

Judgment of conviction for possession of a controlled substance, possession of a controlled substance with intent to deliver, and possession of paraphernalia, <u>affirmed</u>.

Rodney R. Baumgartner, Burley, pro se appellant.

Hon. Lawrence G. Wasden, Attorney General; John C. McKinney, Deputy Attorney General, Boise, for respondent.

_____

BRAILSFORD, Judge

Rodney R. Baumgartner appeals pro se from his judgment of conviction for possession of a controlled substance, possession of a controlled substance with intent to deliver, and possession of paraphernalia. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Baumgartner has multiple sclerosis, is disabled, and does not work. In December 2017, the police obtained a warrant to search Baumgartner's residence in Burley, Idaho. The magistrate issued the search warrant based on an affidavit attesting that first, the police had discovered in Baumgartner's trash a clear plastic baggie containing a crystal substance which tested presumptively positive for methamphetamine. Second, the police stopped a vehicle

1

previously observed at Baumgartner's residence for a traffic infraction; a drug-detection canine indicated on the vehicle; and drugs were discovered in the driver's pocket. The driver claimed she had purchased the methamphetamine from Baumgartner, had been purchasing methamphetamine from Baumgartner for seven years, and had seen drug paraphernalia at Baumgartner's residence. Third, the police later stopped a different vehicle, which was leaving Baumgartner's residence, for a traffic infraction; a drug-detection canine indicated on the vehicle; and the driver had methamphetamine in her possession.[1]

Following execution of the search warrant, Baumgartner was charged with possession of a control substance, possession of a controlled substance with intent to deliver, and possession of paraphernalia. Idaho Code §§ 37-2732(a)(1)(A), 37-2732(c)(1), 37-2734A. Proceeding pro se, Baumgartner filed a motion to suppress the evidence the police seized during the search of his residence, arguing that probable cause did not support the search warrant and that the magistrate issuing the search warrant was not neutral and was biased. The district court rejected these arguments, ruling that probable cause supported the search warrant and that Baumgartner failed to establish the magistrate was not neutral and was biased.

Baumgartner proceeded to a jury trial and continued to represent himself pro se. At trial, police officers testified about the execution of the search warrant, including that the police located Baumgartner and another individual in the residence in a bedroom and that, during their search, the police discovered: (1) a methamphetamine pipe in the bedroom on the floor near where Baumgartner and the other individual were located; (2) a scale in the bedroom; (3) three digital scales in the living room; (4) numerous boxes of clear plastic baggies of different sizes in the kitchen; (5) $1,700 in cash hidden behind insulation in the basement; (6) $373 in cash in Baumgartner's wallet; (7) $160 cash in Baumgartner's pocket; (8) a baggie with white residue in the kitchen; and (9) a plastic baggie containing a crystal substance weighing approximately 8.8 grams in the bedroom where the police first encountered Baumgartner. Both this substance and the pipe tested presumptively positive for methamphetamine.

---

[1]    These facts are derived from the district court's order denying Baumgartner's motion to suppress. The affidavit in support of the search warrant is not in the appellate record. We presume, however, that the affidavit supports the district court's recitation of the facts contained in that affidavit. *See State v. Repici*, 122 Idaho 538, 541, 835 P.2d 1349, 1352 (Ct. App. 1992) (missing appellate record presumed to support district court's actions).

Also during trial, two police officers testified that 8.8 grams of methamphetamine is a dealer amount, not a user amount. Detective Love testified:

> Q. So the money, what was the purpose of taking the money?
> A. The money was seized, due to the 8.8 grams of methamphetamine that was found in the house, as well as the numerous scales, the numerous empty baggies, the previous surveillance intel. All of those things coupled together, brought together, that by my training and experience, tells me you were dealing methamphetamine, sir.

Further, Detective Love testified that .2 grams is a "typical" amount for a user to possess; 8.8 grams is about "88 potential uses" or "potentially 88 drug deals"; and "8.8 grams . . . is not a user amount [but] a dealer amount of methamphetamine." Similarly, Captain Kindig also testified that 8.8 grams of methamphetamine is "not a user amount" but an "amount for distributing" and that "digital scales, multiple digital scales, packing material [are] commonly used for the distribution and sale of methamphetamine." The jury found Baumgartner guilty on all counts, and Baumgartner timely appeals.

## II.

## ANALYSIS

### A. Search Warrant

Baumgartner challenges the district court's denial of his motion to suppress. His challenge focuses primarily on whether probable cause supported the search warrant. Specifically, Baumgartner argues the State fabricated evidence against him to obtain a search warrant, including falsely claiming that a witness was an "informant"; the so-called informant admitted purchasing drugs from Baumgartner after the police pulled over her vehicle and found drugs and paraphernalia in her possession; and a baggie the police discovered in Baumgartner's trash tested positive for methamphetamine. In support of his argument, Baumgartner offers on appeal electronically filed documents related to the informant's prior criminal charges, which documents he claims disprove that the police stopped the informant and found methamphetamine in her possession on the day the State contends the police stopped her.[2] Further, Baumgartner

---

[2] Based on the appellate record, Baumgartner apparently did not present these electronically filed documents to the district court in support of his motion to suppress. Appellate court review is limited to the evidence, theories, and arguments that were presented below. *State v. Garcia-Rodriguez*, 162 Idaho 271, 275, 396 P.3d 700, 704 (2017). Accordingly, we do not consider the documents.

explains that he has multiple sclerosis and had a prescription for a medication "which is the equivalent of methamphetamine" and that the medication would have tested positive for methamphetamine.[3]

When probable cause to issue a search warrant is challenged on appeal, the reviewing court's function is to ensure that the magistrate had a substantial basis for concluding that probable cause existed. *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983); *State v. Josephson*, 123 Idaho 790, 792, 852 P.2d 1387, 1389 (1993); *State v. Lang*, 105 Idaho 683, 684, 672 P.2d 561, 562 (1983). In this evaluation, great deference is paid to the magistrate's determination. *Gates*, 462 U.S. at 236; *State v. Wilson*, 130 Idaho 213, 215, 938 P.2d 1251, 1253 (Ct. App. 1997). The test for reviewing the magistrate's action is whether it abused its discretion in finding that probable cause existed. *State v. Holman*, 109 Idaho 382, 387, 707 P.2d 493, 498 (Ct. App. 1985). When a search is conducted pursuant to a warrant, the burden of proof is on the defendant to show the search was invalid. *State v. Kelly*, 106 Idaho 268, 275, 678 P.2d 60, 67 (Ct. App. 1984).

The appellant, however, has the responsibility to provide a sufficient record to substantiate his appellate claims. *State v. Murinko*, 108 Idaho 872, 873, 702 P.2d 910, 911 (Ct. App. 1985). In the absence of an adequate record on appeal to support the appellant's claims, we will not presume error. *State v. Beason*, 119 Idaho 103, 105, 803 P.2d 1009, 1011 (Ct. App. 1991). Any portion of the record missing on appeal is presumed to support the actions of the district court. *State v. Repici*, 122 Idaho 538, 541, 835 P.2d 1349, 1352 (Ct. App. 1992).

Although Baumgartner had the responsibility to provide a sufficient record to challenge the magistrate's conclusion that probable cause justified the search warrant, he failed to provide that record. For example, missing from the appellate record is the affidavit of probable cause, the search warrant, and the transcript of the hearing on Baumgartner's motion to suppress. Absent this record, we will not presume error but rather presume the items missing from the record support the district court's order denying Baumgartner's motion to suppress. Accordingly, the district court did not abuse its discretion by concluding the baggie recovered

---

[3]     Baumgartner's argument is unclear whether he is asserting that the substance the police found in the trash could have been Baumgartner's multiple sclerosis medication or that he tested positive for methamphetamine (resulting in the revocation of his release on bond) because of his medication. Baumgartner, however, did not present any evidence at trial about the medication he takes for his disability.

from Baumgartner's trash and the information the informants provided the police supported a finding of probable cause for the search warrant.

Baumgartner also challenges the search warrant on the basis that the magistrate, who signed the search warrant, was biased against him.[4] The only information in the record regarding this challenge is Baumgartner's own affidavit, which contains vague allegations of the magistrate's prior involvement (either as a prosecutor or a magistrate) in other criminal cases against Baumgartner or involving Baumgartner and conclusory allegations of the magistrate's purported bias as a result. Rejecting Baumgartner's challenge, the district court ruled that Baumgartner failed to support his "vague allegations of bias" with "even a modicum of evidence" of actual bias. Again, absent a transcript of the hearing on the motion to suppress and the exhibits admitted during that hearing, this Court must presume the missing record supports the district court's ruling that the magistrate was neutral and unbiased. *See id.* Moreover, that the magistrate previously acted as a prosecuting attorney or presided over other cases involving Baumgartner is not a basis to challenge the magistrate's qualification to issue the search warrant in this case. *Cf. State v. Zamora*, 129 Idaho 817, 818, 933 P.2d 106, 107 (1997) (ruling judge's involvement as prosecuting attorney in prior cases against defendant was inadequate basis to disqualify judge).

## B.    Sufficiency of Evidence

Baumgartner raises several issues on appeal which suggest a challenge to the sufficiency of evidence at trial supporting his conviction. These issues include that the police did not find any drugs on Baumgartner's person when executing the warrant; two people were present at Baumgartner's resident (Baumgartner and another) when the police executed the warrant and purportedly seized "only a user amount [of methamphetamine] between the two of them"; and Baumgartner had "to justify the police statements that [he] possessed more than a user's amount [of methamphetamine]." We construe these arguments as challenging the sufficiency of evidence to convict Baumgartner of possession of a controlled substance and of possession with intent to deliver. I.C. §§ 37-2732(a)(1)(A), 37-2732(c)(1).

---

[4]    Baumgartner also argues that by signing the search warrant, the magistrate violated 28 U.S.C. § 455, which governs the disqualification of a federal justice, judge, or magistrate. This federal authority, however, is inapplicable in Baumgartner's state court case.

Appellate review of the sufficiency of the evidence is limited in scope. A finding of guilt will not be overturned on appeal where there is substantial evidence upon which a reasonable trier of fact could have found that the prosecution sustained its burden of proving the essential elements of a crime beyond a reasonable doubt. *State v. Herrera-Brito*, 131 Idaho 383, 385, 957 P.2d 1099, 1101 (Ct. App. 1998); *State v. Knutson*, 121 Idaho 101, 104, 822 P.2d 998, 1001 (Ct. App. 1991). We will not substitute our view for that of the trier of fact as to the credibility of the witnesses, the weight to be given to the testimony, and the reasonable inferences to be drawn from the evidence. *Knutson*, 121 Idaho at 104, 822 P.2d at 1001; *State v. Decker*, 108 Idaho 683, 684, 701 P.2d 303, 304 (Ct. App. 1985). Moreover, we will consider the evidence in the light most favorable to the prosecution. *Herrera-Brito*, 131 Idaho at 385, 957 P.2d at 1101; *Knutson*, 121 Idaho at 104, 822 P.2d at 1001.

To prove Baumgartner possessed a controlled substance, the district court instructed the jury that the State had to prove beyond a reasonable doubt that Baumgartner possessed any amount of methamphetamine and knew or believed it to be a controlled substance. Further, the district court instructed that to prove possession with intent to deliver, the State additionally had to prove Baumgartner possessed a controlled substance in a quantity greater than would be kept for personal use; the existence of items customarily used to weigh, package, or process controlled substances; or the presence of money or records indicating sales or deliveries of controlled substances. Finally, the district court instructed that a person has possession of an item if he knows of the item's presence and either has physical control over the item or the power and intention to control it and that more than one person can have possession of an item.

We hold that the State admitted substantial evidence upon which the jury could have found beyond a reasonable doubt that Baumgartner committed the charged crimes. As noted above, the State offered testimony that the police discovered methamphetamine and items customarily used in delivering methamphetamine (including scales, baggies, and cash) in Baumgartner's residence. Further, the State offered testimony that the 8.8 grams of methamphetamine greatly exceeds the amount a single user would ordinarily possess. Further, contrary to Baumgartner's argument, ample evidence supports a nexus between Baumgartner and the seized evidence to sufficiently prove beyond a reasonable doubt that Baumgartner was not simply a bystander but rather had the power and intent to exercise dominion and control over the

seized items in his residence and, therefore, he possessed them. *See State v. Rogerson*, 132 Idaho 53, 58, 966 P.3d 53, 58 (Ct. App. 1998) (noting definition of "constructive possession").

## C. Right to Call Witnesses

Baumgartner argues his Sixth Amendment right to be confronted with the witnesses against him was violated. Specifically, he argues the prosecuting attorney and the district court "denied [his] right to call or subpoena witnesses . . . by using the term informants and protected information." Based on a colloquy during trial, Baumgartner's appellate argument appears to be that he wanted to call one of the "informants," who told the police that she had purchased methamphetamine from Baumgartner, to testify at trial but he failed to subpoena her. At trial, Baumgartner argued he was unable to subpoena the informant because the State never provided him with the informant's personal information.

The record, however, belies Baumgartner's claim that he was unaware of the informant's personal information for purposes of subpoenaing her. At trial, Baumgartner indicated both that he knew the informant's name and that she was incarcerated. Accordingly, to the extent Baumgartner's argument is that he could not subpoena the informant because the State refused to disclose her identity or location that argument is without merit. Furthermore, Baumgartner was required to follow the rules of procedure, including subpoenaing witnesses, despite being a pro se litigant. The legal principles that "pro se litigants are not entitled to special consideration or leniency because they represent themselves" and that pro se litigants "must follow the same rules [as an attorney], including the rules of procedure" are well-established. *State v. McDay*, 164 Idaho 526, 528, 432 P.3d 643, 645 (2018).

## D. Jury Issues

Baumgartner raises three challenges related to the composition of the jury. First, he argues the district court denied his right to peremptorily challenge two jurors who were purportedly laughing at him and "belittling" him. Second, he argues the jury was not "a local jury." Third, he argues the district court "removed" a juror in the middle of trial without providing a reason and without Baumgartner's consent. None of these arguments has merit.

We decline to consider Baumgartner's second and third arguments, which he raises for the first time on appeal. *See State v. Fodge*, 121 Idaho 192, 195, 824 P.2d 123, 126 (1992) (ruling issues not raised below may not be considered for first time on appeal). Moreover, the record does not support either Baumgartner's second or third arguments. Although Baumgartner

7

claims the jury was "formed from residence [sic] from many states besides Idaho," nothing in the record supports this claim. Although the "voir dire report" in the record indicates the "prior place of residence" of many of the prospective jurors to be outside of Cassia County, that information does not mean that any of the jurors were not residents of Cassia County at the time they were summoned for jury duty.

Similarly, nothing in the record supports Baumgartner's claim that the district court removed a juror during the course of the trial without Baumgartner's consent. Rather, the record shows that the exact same thirteen jurors who were selected at the beginning of the trial heard all the evidence. Then, after the close of evidence and before deliberations began, an alternate juror was randomly selected (in Baumgartner's presence and without his objection) and the remaining twelve jurors deliberated and found Baumgartner guilty.

Finally, Baumgartner's claim that the district court denied his right to peremptorily challenge two jurors is without merit. At trial, Baumgartner claimed he heard laughter from a juror when the jury returned to the courtroom to receive final jury instructions and stated he "would like to preemptive challenge that person." In response, the district court stated it did not hear laughter. To the extent Baumgartner's objection was that he wished to exercise a peremptory challenge against the juror, that right was no longer available to him after the jury had been selected.

A more appropriate procedural challenge would have been a motion for a new trial based on juror misconduct. Baumgartner, however, failed to make that motion and otherwise failed to make a showing necessary to support such a motion:

> [T]he proper test of determining whether a defendant is entitled to a new trial due to juror misconduct is essentially two-fold. First, the defendant must present clear and convincing evidence that juror misconduct has occurred. Second, the trial court must be convinced that the misconduct reasonably could have prejudiced the defendant.

*State v. Seiber*, 117 Idaho 637, 640, 791 P.2d 18, 21 (Ct. App. 1989). Under this test, Baumgartner failed to establish that any juror was, indeed, laughing at him and that he was prejudiced by that laughter.

### E. Civil Forfeiture Action

Baumgartner challenges the manner in which a civil forfeiture case was conducted against him. In this case, however, Baumgartner appeals only from his conviction and not from

8

the separate civil forfeiture action. As a result, this Court does not have jurisdiction to review issues related to the civil action.

## F. Bail

Baumgartner asserts numerous challenges regarding the manner in which the court handled his bail, including that his bond was excessive. "[T]he proper method of challenging a bond as excessive is through a petition for writ of habeas corpus" provided the defendant has first applied to the trial court for a bail reduction. *State v. Ybarra*, 102 Idaho 573, 575, 634 P.2d 435, 437 (1981); *see also State v. Trefren*, 112 Idaho 812, 814, 736 P.2d 864, 866 (Ct. App. 1987) (concluding writ of habeas corpus appropriate procedure for challenging bail). If the judgment of conviction is affirmed, the issue of bail is moot. *Trefren*, 112 Idaho at 814, 736 P.2d at 866. Because we affirm Baumgartner's conviction, Baumgartner's bail challenges are moot.

## G. Police and Prosecutor

Baumgartner also asserts numerous challenges against the police officers who executed the search warrant and the prosecutor who was present during the warrant's execution. Baumgartner's arguments about what specific conduct he challenges are vague and unclear. Further, Baumgartner did not preserve these challenges for appeal and does not provide any supporting authority. For these reasons, we decline to consider Baumgartner's claims that the police "stalked" or "harassed" him; the prosecutor was present at the warrant's execution; and the police had "conflicts of interest." *See Fodge*, 121 Idaho at 195, 824 P.2d at 126 (ruling issues not raised below may not be considered for first time on appeal); *State v. Zichko*, 129 Idaho 259, 263, 923 P.2d 966, 970 (1996) (ruling issue waived on appeal if either authority or argument is lacking).

## H. Mistrial

Baumgartner summarily argues that he "[w]as denied a mistrial based on being misled by the Judge and the Prosecutor." At no time, however, did Baumgartner ever move for a mistrial. For this reason, we decline to consider this argument. *See Fodge*, 121 Idaho at 195, 824 P.2d at 126 (ruling issues not raised below may not be considered for first time on appeal).

9

## III.

## CONCLUSION

Based on the foregoing, we affirm Baumgartner's judgment of conviction for possession of a controlled substance, possession of a controlled substance with intent to deliver, and possession of paraphernalia.

Judge HUSKEY and Judge LORELLO **CONCUR**.